[No. G039025. Fourth Dist., Div. Three. Feb. 29, 2008.]

ANTHONY LOPEZ, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Deborah A. Kwast, Public Defender, Thomas Havlena, Chief Deputy Public Defender, Kevin J. Phillips, Assistant Public Defender, and Martin F. Schwarz, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Tony Rackauckas, District Attorney, and John R. Maxfield, Deputy District Attorney, for Real Party in Interest.

OPINION

**SILLS, P. J.**—Anthony Lopez petitioned us for a stay of his jury trial and a writ of prohibition/mandate on several grounds. We denied his requests summarily, but the California Supreme Court granted review of the case, transferring the matter back to us with directions "to vacate [our] order denying the petition for writ . . . *and to issue an alternative writ* with respect to petitioner's demurrer to the sentencing allegation under Penal Code section 186.22, subdivision (d)[1] (see *People v. Briceno* (2004) 34 Cal.4th 451 [20 Cal.Rptr.3d 418, 99 P.3d 1007]; *People v. Arroyas* (2002) 96 Cal.App.4th 1439 [118 Cal.Rptr.2d 380])." (Italics added.) We issued the alternative writ, but the respondent court chose not to comply with the directive. After giving the parties the opportunity to fully brief and argue the matter,[2] we now order the writ be issued.

## FACTS

Anthony Lopez was arrested for allegedly being in the company of Santa Nita criminal street gang (SNG) members after 10:00 p.m. while possessing

---

[1] Penal Code section 186.22, subdivision (d), provides that "[a]ny person who is convicted of a public offense punishable as a felony or a misdemeanor, which is committed for the benefit of, at the direction of or in association with, any criminal street gang with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison for one, two, or three years . . . ."

All further section references are to the Penal Code, unless otherwise stated.

[2] In his original pleadings, the petitioner raised various other issues besides the one addressed here. However, the Supreme Court did not grant review of those other issues and confined its transfer order to the specific charging issue under section 186.22, subdivision (d). Therefore, we do not address any of the other matters Lopez originally raised, and which our original summary denial resolved.

open containers of alcohol, actions which violated three terms of a court injunction issued to "abate the public nuisance" of SNG conduct. An indictment issued, charging Lopez with three counts of contempt (see § 166, subd. (a)(4))[3] of that injunction, one for each of the three violated terms.[4] In addition, each count of contempt carried the allegation that it was committed for "the benefit of, at the direction of, and in association with . . . a criminal street gang," pursuant to Penal Code section 186.22, subdivision (d). Lopez demurred to the indictment because that subdivision provides that anyone who is convicted of the attached crime shall then be punished with specified minimum terms of imprisonment greater than those terms otherwise permitted for the crime. In this case, it elevated the crime from a misdemeanor to a "wobbler,"[5] carrying the potential of an increased felony sentence.[6] Because the factual crux of section 186.22, subdivision (d)—gang-related misconduct—was already the basis for the initial issuance of the injunction, Lopez argues it should not also be the basis to elevate the crime.[7] This dual use of the same fact, Lopez argues, is impermissible bootstrapping. (See *People v. Arroyas* (2002) 96 Cal.App.4th 1439 [118 Cal.Rptr.2d 380].) It is this charging anomaly to which Lopez demurred; the trial court overruled that demurrer.

## DISCUSSION

Lopez argues that a felony prosecution cannot legally be accomplished by bootstrapping a gang enhancement under section 186.22 onto a criminal contempt charge when the underlying order is based on, and attempts to

---

[3] Section 166, subdivision (a) provides that "every person guilty of any contempt of court, . . . is guilty of a misdemeanor . . . ."

[4] In addition to the contempt counts, it was alleged that Lopez had four prior prison terms, pursuant to section 667.5, subdivision (b).

[5] See *People v. Vessell* (1995) 36 Cal.App.4th 285, 291–292 [42 Cal.Rptr.2d 241]: A wobbler is an offense chargeable as either a misdemeanor or a felony.

[6] The indictment charging Lopez states that the offense is a felony, but section 186.22, subdivision (d) grants the sentencing court the discretion to punish it as a misdemeanor or a felony. (See *People v. Arroyas, supra*, 96 Cal.App.4th at pp. 1443–1444; see fn. 8, *post.*)

[7] To enjoin a criminal street gang as a public nuisance, a showing was necessary that gang members were engaged in gang-related misconduct such as to interfere with the community's enjoyment of peace, health, safety and convenience. (See, e.g., *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1108–1109 [60 Cal.Rptr.2d 277, 929 P.2d 596].) To issue a preliminary injunction for abatement of a public nuisance, the trial court must " ' "evaluat[e] two interrelated factors . . . . The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm the defendant is likely to suffer if the preliminary injunction were issued." ' [Citation.]" (*Id.* at p. 1109.)

abate, the same gang-related conduct. He likens it to the impermissible bootstrapping effect prohibited in *People v. Arroyas, supra*, 96 Cal.App.4th 1439.

Such a dual use of the fact of gang misconduct was addressed directly in *Arroyas*. Arroyas was charged with vandalism after officers found him with a green pen defacing a sign. He then admitted to being a member of a particular gang with the moniker of "Chewy." The initials of that gang and the name "Chewy" were found written in green ink on several nearby walls. (*People v. Arroyas, supra*, 96 Cal.App.4th at p. 1441.)

The charge of vandalism was elevated to a felony for being gang related under section 186.22, subdivision (d), and also enhanced by the allegation that it was gang related under section 186.22, *subdivision (b)*. The reviewing court upheld the felony designation[8] of the crime due to the application of section 186.22, subdivision (d), even though the vandalism statute[9] at that time required proof that the value of the damage to the property exceeded $5,000 to constitute a felony. However, the reviewing court struck the application of section 186.22, subdivision (b), which resulted in enhancing any prison term by two, three or four years. It did so, notwithstanding "the purpose of [section 186.22] was to combat the 'state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods.' . . . [¶] While any felony may be punished under section 186.22, subdivision (b)[], subdivision (d) presents an option to punish a felony differently than provided by subdivision (b)[], and also provides an option to punish gang-related misdemeanors more severely. Although subdivision (d) allows the court to impose felony punishment for a misdemeanor committed with a gang-related purpose, nothing in the statute or in its stated purposes suggests an intention of the people of this state *to bootstrap subdivision (d) misdemeanors into subdivision (b)(1) felonies as a means of applying a double dose of harsher punishment.*" (*People v. Arroyas, supra*, 96 Cal.App.4th at pp. 1444–1445, italics added.)

---

[8] The *Arroyas* court emphasized that section 186.22, subdivision (d) did not specifically elevate the crime to felony status. The statute actually transformed whatever substantive crime is charged into a "wobbler," granting the power to the sentencing court to impose either felony or misdemeanor punishment, in its discretion. (*People v. Arroyas, supra*, 96 Cal.App.4th at pp. 1443–1444.)

[9] Section 594, subdivision (b)(2), as it stood in 2000, provided felony punishment for "maliciously" defacing, damaging or destroying property, but only if "the amount of defacement, damage, or destruction" was at least "five thousand dollars."

The district attorney responds that Lopez has *not* been doubly punished: He is not facing two separate and distinct enhancing subdivisions of section 186.22. Moreover, the district attorney characterizes the *Arroyas* prohibition to be limited to those instances in which one enhancement *automatically* triggers the imposition of the second enhancement's terms. Contempt is a misdemeanor, but it is elevated to a wobbler when committed for the benefit of a gang under section 186.22, subdivision (d). Thus, it can now be charged as a felony under section 186.22, subdivision (d). (§ 186.22, subd. (d); see *People v. Arroyas, supra,* 96 Cal.App.4th at p. 1446 [the subdivision grants the sentencing court discretion to treat the offense as either a felony or misdemeanor].) Such a construction—argues the district attorney—merely meets the intent of the Gang Violence and Juvenile Crime Prevention Act—known as Proposition 21—a term of which became subdivision (d) of section 186.22. This law "voices the intent of the people that gang-related crimes receive enhanced punishment . . . ." (96 Cal.App.4th at p. 1448.)

■ However, as the *Arroyas* court noted, Proposition 21 does *not* permit "a defendant [to] receive double punishment because his or her crime fell within the scope of two statutes. Rather, [section 37 of Proposition 21] advises that where a crime does fall within the scope of two statutes, only the statute yielding the longer period of punishment should apply." (*People v. Arroyas, supra,* 96 Cal.App.4th at p. 1448.) Thus, the question remains whether obtaining an injunction against gang-related conduct by a gang member and then enhancing said conduct because it is gang related under section 186.22, subdivision (d), imposes the "double punishment" castigated in *Arroyas.*

In *People v. Briceno, supra,* 34 Cal.4th 451, the California Supreme Court addressed and resolved the issue whether any felony to which an enhancement under section 186.22, subdivision (b) is attached may qualify as a serious felony for *future* enhancement under section 667, subdivision (a)(1). Serious felonies are listed in section 1192.7, subdivision (c), which includes in item (28)—added by the passage of Proposition 21—"any felony offense, which would also constitute a felony violation of Section 186.22." Briceno argued that could only mean the single felony of street terrorism under section 186.22, subdivision (a). The court rejected this narrow interpretation, concluding that *any* felony to which an enhancement under section 186.22, subdivision (b) was attached would thereafter comprise a "serious felony" for *later* enhancing purposes. (34 Cal.4th at pp. 458–459.)

■ In so holding, the court rejected the characterization this interpretation resulted in double punishment or bootstrapping because "any felony that is

gang related is not treated as a serious felony in the *current* proceeding . . . ." (*People v. Briceno, supra*, 34 Cal.4th at p. 465, italics added.) At the same time, the *Briceno* court approved the *Arroyas* holding by noting that it "avoids the impermissible bootstrapping that would occur if any felony that is gang related is also deemed serious in the current proceeding. Specifically, while it is proper to define any felony committed for the benefit of a criminal street gang as a serious felony under section 1192.7[, subdivision](c)(28), it is improper to use the *same* gang-related conduct *again* to obtain an additional five-year sentence under section 186.22[, subdivision](b)(1)(B)." (*Id.* at p. 465, original italics.) The court reiterated the *Arroyas* determination that " 'nothing in the statute or in its stated purposes suggests an intention of the people of this state to bootstrap [section 186.22,] subdivision (d) misdemeanors into [section 186.22,] subdivision (b)(1) felonies as a means of applying a double dose of harsher punishment.' [Citations.]" (*Ibid.*) In other words, the Supreme Court limits application of *any* enhancing or punitive statutes based on the same fact of gang benefit to *one* elevating effect, which section 37 of Proposition 21 dictates must be the most punitive provision.

The pertinent point voiced in the *Briceno* opinion was that the "*same* gang-related conduct" cannot be used twice in the same sentencing scheme without violating the concept of double punishment for the same act. (*People v. Briceno, supra*, 34 Cal.4th at p. 465, original italics; see also *People v. Ireland* (1969) 70 Cal.2d 522, 539 [75 Cal.Rptr. 188, 450 P.2d 580] ["This kind of bootstrapping finds support neither in logic nor in law . . . when it is based upon a felony which is an integral part of the homicide and which the *evidence* produced by the prosecution shows to be an offense included *in fact* within the offense charged" (first italics added)].)

That appears to have occurred in Lopez's case: The same "gang-related conduct" is being used first as *the* violation of the injunction and then used again to elevate that offense from a straight misdemeanor to the wobbler under section 186.22, subdivision (d). It is most egregiously seen here because the actions comprising the violations of the court order are not criminal in themselves: They only become criminal *because* they are gang related.

■ The language excerpted from *Briceno* undermines the district attorney's argument that only if one enhancement automatically triggers imposition of a second enhancement's terms does double punishment come into play. Quite to the contrary, it is not the enhancement statutes that are crucial: The crux is if a single *fact* is used to prove both of the enhancing provisions. Whether double punishment is inflicted is not resolved simply because the

jury must first find the underlying offense and then find the enhancement true. The dual use of the same fact of gang-related conduct is the pivotal point that constitutes the impermissible bootstrapping.

■ Specifically, Lopez allegedly violated the court order by being "outside" between the hours of 10:00 p.m. and sunrise, being found in the company of another gang member while a gang member, and drinking alcoholic beverages. The district attorney emphasizes that he is not charged with gang-related conduct; he is charged with willful disobedience of a lawfully issued court order. (See *Raskin v. Superior Court* (1934) 138 Cal.App. 668, 670 [33 P.2d 35] [contempt is essentially a crime against the authority of a court].) Thus, the actual offense with which he is charged does not, *on its face*, relate to the same facts used to elevate the crime under section 186.22, subdivision (d), i.e., gang-related conduct.

Irrespective of this characterization, the injunction was issued to abate gang-related conduct. It focuses only on otherwise innocuous acts[10] which are made criminal solely because they are engaged in by gang members for the benefit of that gang. And it is those otherwise innocuous acts which comprise both the disobedience of the injunction *and* the proof of a gang connection for the enhancing allegation under section 186.22, subdivision (d). Thus, it is "the *same* gang-related conduct [used] *again* to obtain an additional" form of punishment (*People v. Briceno, supra*, 34 Cal.4th at p. 465, original italics), i.e., the elevated designation as a felony.

■ Moreover, "it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of [a] statute's coverage. To the extent that the language or history of [a statute] is uncertain, this 'time-honored interpretive guideline' serves to ensure both that there is fair warning of the boundaries of criminal conduct and that legislatures, not courts, define criminal liability. [Citations.]" (*Crandon v. United States* (1990) 494 U.S. 152, 158 [108 L.Ed.2d 132, 110 S.Ct. 997].)

---

[10] In *People v. Englebrecht* (2001) 88 Cal.App.4th 1236 [106 Cal.Rptr.2d 738], a case involving an injunction issued by the San Diego Superior Court prohibiting gang members from wearing certain colors, using certain hand signs or voicing certain words indicative of that gang, the prosecution was only able to penalize a gang member engaging in such innocuous conduct because it had already established that such conduct *was* gang related and that such gang behavior comprised a public nuisance. (*Id.* at p. 1257.) Without that showing, such acts or conduct are merely the exercise of a person's protected liberty: "[T]he freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment. . . . Indeed, it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is 'a part of our heritage' [citation], or the right to move 'to whatsoever place one's own inclination may direct' identified in Blackstone's Commentaries. [Citation.]" (*Chicago v. Morales* (1999) 527 U.S. 41, 53–54 [144 L.Ed.2d 67, 119 S.Ct. 1849], fn. omitted.)

We conclude that the prosecution cannot legally criminalize behavior due to the sole fact that it is gang related and then *increase* punishment for that behavior simply by again alleging the same gang-related fact. Let a writ of mandate issue directing respondent court to vacate its order of June 21, 2007, overruling petitioner's demurrer, and to issue a new order sustaining the demurrer in part, as to the allegation under section 186.22, subdivision (d). The alternative writ of mandate issued by this court on October 18, 2007, having served its purpose, is discharged.

Rylaarsdam, J., and O'Leary, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied June 11, 2008, S162526.